UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

[Filed Electronically]

| | |
|---|---|
| **LARRY BOWLES and AUSTIN BOWLES,** Co-Administrators of the Estate of Shannon Bowles, deceased, and Next Friends of his minor children, T.B.B., N.H.S.B., C.D.B., M.W.B., and B.W., | ) ) ) ) ) ) |
|         PLAINTIFFS | ) ) |
| v. | ) ) |
| **BOURBON COUNTY, KENTUCKY** Serve:    Mike Williams               County Judge-Executive              301 Main Street, Room 203              Paris, KY 40361-2005 | ) ) ) ) ) ) |
| -and- | ) ) |
| **GARY WILSON, individually** Serve: Bourbon Co. Regional Detention Ctr.       101 Legion Drive       Paris, Kentucky 40361 | ) ) ) ) ) |
| -and- | ) ) |
| **SHEILA GANT, individually** Serve: Bourbon Co. Regional Detention Ctr.       101 Legion Drive       Paris, Kentucky 40361 | ) ) ) ) ) |
| -and- | ) ) |
| **ADVANCED CORRECTIONAL HEALTHCARE, INC.** Serve: C. T. Corporation System       306 W. Main St., Suite 512       Frankfort, KY 40601 | ) ) ) ) ) ) |
| -and- | ) ) |

| | |
|---|---|
| MATTHEW P. JOHNSTON, ARNP, individually<br>Serve: Bourbon Co. Regional Detention Ctr.<br>     101 Legion Drive<br>     Paris, Kentucky 40361 | )<br>)<br>)<br>)<br>)<br>) |
| -and- | )<br>) |
| TRENA PRESTON, ARNP, individually<br>Serve: Bourbon Co. Regional Detention Ctr.<br>     101 Legion Drive<br>     Paris, Kentucky 40361 | )<br>)<br>)<br>)<br>) |
| -and- | )<br>) |
| KELLY COX-LYNN, LPN, individually<br>Serve: Bourbon Co. Regional Detention Ctr.<br>     101 Legion Drive<br>     Paris, Kentucky 40361 | )<br>)<br>)<br>)<br>) |
| -and- | )<br>) |
| HARRY LAYTART, AMIE KEARNS,<br>JUSTIN HUGHES, BRITTANY SIDNEY,<br>and SONJA FRENCH, individually<br>Serve: Bourbon Co. Regional Detention Ctr.<br>     101 Legion Drive<br>     Paris, Kentucky 40361 | )<br>)<br>)<br>)<br>)<br>)<br>) |
|       DEFENDANTS. | ) |

## COMPLAINT

### I. Introduction

1. Larry Bowles and Austin Bowles, Co-Administrators of the Estate of Larry's son and Austin's father, Shannon Bowles, deceased, and as Next Friends of Shannon's five (5) minor children, T.B.B., N.H.S.B., C.D.B., M.W.B., and B.W., complain of the egregious and unjustifiable treatment of Mr. Bowles by Defendants named in the caption above. As more specifically set forth below, Mr. Bowles, after his incarceration at the Bourbon County Regional Detention Center ("the Jail") was subjected to Defendants' deliberate indifference to his obviously

2

serious medical needs and, as a consequence, died. It is the purpose of this action to recover the actual damages Mr. Bowles, his estate, and his minor children sustained as a result of Defendants' conduct, and punitive damages to punish Defendants' conduct and forever deter its repetition.

## II. Jurisdiction and Venue

2.  Plaintiffs seek damages from Defendants under the Civil Rights Act of 1871, 42 U.S.C. § 1983, for gross and unconscionable violations of the rights, privileges and immunities guaranteed Mr. Bowles by the Eighth, Tenth and Fourteenth Amendments to the Constitution of the United States. Accordingly, this Court has jurisdiction of this case pursuant to the provisions of 38 U.S.C. §§ 1331 and 1343. Plaintiffs also seek damages for negligence and gross negligence. Bourbon County, Kentucky is the location of all acts pertinent to this suit, and venue is therefore proper in this Court.

## III. Parties

3.  Plaintiffs and Mr. Bowles' minor children all reside in Kentucky. Plaintiffs were appointed Co-Administrators of Mr. Bowles' estate by order of Nicholas District Court on March 1, 2017.

4.  Defendant Bourbon County at all times mentioned herein, employed, was responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, the officers, employees and independent contractors at the Jail.

5.  Defendants Wilson and Gant were at all times mentioned herein acting individually as the Jail's Administrator and Chief Deputy, respectively, and as such established policies either formally or by custom for, and were responsible for the employment, training, supervision and conduct of, the officers, employees and independent contractors at the Jail.

6. Defendant Advanced Correctional Healthcare, Inc. ("ACH") at all times mentioned herein employed, was responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, the health care professionals of the Jail, including Defendants Johnston, Preston, and Cox-Lynn.

7. Defendants Johnston, Preston, and Cox-Lynn were at all times mentioned herein medical professionals employed or separately contracted by ACH to work at the Jail, and personally participated in the mistreatment of Mr. Bowles described below. In addition, Defendants Johnston and Preston were responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, Defendants James and Cox-Lynn.

8. Defendants Laytart, Kearns, Hughes, Sidney, and French were at all times mentioned herein officers and employees of the Jail, and personally participated in the mistreatment of Mr. Bowles described below.

## IV. Nature of Defendants' Conduct

9. Defendants, individually and in conspiracy with one another, engaged in the conduct described below under color of the law of the Commonwealth of Kentucky, and Bourbon County. The individual Defendants named above knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved the conduct described below. The offenses described below resulted from the failure of the County and the supervisory officials named above to employ qualified persons for positions of authority in the Jail, and/or to properly or conscientiously train and supervise the conduct of such persons after their employment, and/or to promulgate appropriate operating policies and procedures either formally or by custom to protect the constitutional rights of Mr. Bowles. Defendants' conduct was intentional and grossly

4

negligent, indicated active malice toward Mr. Bowles and a total, deliberate and reckless disregard for and indifference to his life and his constitutional and common law rights, and justifies an award of punitive damages in addition to the actual damages he, his estate and his son are entitled to recover.

### V. Facts

10. On March 15, 2016, Mr. Bowles was arrested for public intoxication attributed to drugs and taken to the Jail. He was 41 years old.

11. On admission to the Jail, Mr. Bowles was examined by an RN, Donna James, who noted that he was nervous, his pupils were non-responsive, his hands were shaky, and that he reported a history of drug abuse. RN James' progress note for that examination stated that "administrator" – presumably Defendant Wilson – "requests that inmate be evaluated due to drug ingestion" and "Heroine (sic) found on inmate," and that Mr. Bowles was sent to the Emergency Room at Bourbon Community Hospital ("the Hospital") for such evaluation.

12. Mr. Bowles was seen at the Hospital on March 15, 2016, diagnosed with substance abuse, and returned to the Jail. The Hospital's discharge instructions specifically stated:

- "The examination and treatment you have received in the Emergency Department today have been rendered on an emergency care basis only and are not intended to be a substitute for an effort to provide complete medical care. You should contact your follow-up physician as it is important that you let him or her check you and report any new or remaining problems since it is impossible to recognize and treat all elements of an injury or illness in a single emergency care visit."

- "PLEASE MONITOR CLOSELY. RETURN TO ED [Emergency Department] IF SYMPTOMATIC. F/U [Follow-up] WITH PCP [Primary Care Physician] IN AM."

13. This information was provided to Defendants ACH, Johnston, Preston, and Cox-Lynn upon Mr. Bowles' return to the Jail on March 15, where they were responsible for his medical care. RN James conducted a follow-up examination of Mr. Bowles after his return from the Hospital, noting that he was "Figity (sic)," and had nausea and diarrhea. In the space marked "Patient Education," RN James wrote: "Don't do drugs." There is no evidence at this stage that RN James saw Mr. Bowles after March 15.

14. The next day, March 16, 2016, Mr. Bowles filled out a sick call request complaining of headaches and that he could not sleep. He was seen on March 17 by Defendant Cox-Lynn who noted his subjective complaints as "Head pain & sleeping trouble." She administered Amoxycillin and Tylenol, she advised Mr. Bowles to apply warm compresses to his face, and her progress note indicates her "Plan" to "Notify NP." However, there is no indication of "NP" involvement beyond Defendant Johnston's signature stamp which is dated March 22, 2016.

15. Six (6) days later, on March 23, 2016, at 4:48 in the morning, deputy jailers were summoned to Mr. Bowles' cell where they observed him shaking, and where he complained that he "HAD A MIGRAINE AND FELT HE WAS GOING TO PASS OUT ...." The deputy jailers' notes reflect that Mr. Bowles said that he'd had the migraine for five (5) hours and that his head hurt "all over." Defendant Preston was called by one of the deputy jailers, and she told the deputy jailer to administer Tylenol and Vistaril and have Mr. Bowles seen by the nurse when she came in later that morning.

16. Mr. Bowles was seen by Defendant Cox-Lynn around 10 am that morning. Her notes reflect that Mr. Bowles complained that he'd had a headache, neck pain, sinus pressure, nausea and vomiting for the preceding two days. Defendant Cox-Lynn "spoke" with Defendant Preston, who prescribed Dilotab twice a day for three days. Defendant Cox-Lynn also appears to have advised Mr. Bowles that he rest and that he apply warm compresses.

17. Three (3) days later, on March 26, 2016, Mr. Bowles filled out another sick call request complaining of "Migraine Headaches Really bad Leg Cramps and Not Sleeping." There is no indication Mr. Bowles was seen by anyone for his complaints on March 26.

18. On March 27, Mr. Bowles filled out another sick call request in which he complained of "Sinus pressure & H/A [headache] N/V [nausea and vomiting]. At around 1:30 pm that afternoon, Mr. Bowles was escorted to the medical clinic by Defendants Laytart and Sidney complaining of a migraine and feeling dizzy. Defendant Cox-Lynn took Mr. Bowles' vitals, noted that his hands were shaky and his pupils were dilated, and told him that she would call the NP. She instructed Mr. Bowles to return to his cell, lay down, put a cold wash cloth over his head and "try to relax" until she was able to contact the NP. Mr. Bowles was taken back to his cell by Defendants Laytart and Sidney in a wheelchair at approximately 1:43 pm.

19. Less than an hour later, at around 2:30 pm, Defendants Hughes and Kearns were summoned to Mr. Bowles' cell after he passed out in the bathroom. They summoned Defendant Cox-Lynn and a wheelchair was brought to the cell. Mr. Bowles was now complaining of "extreme pain" in his head and neck, and that his eyes were "HURTING BAD AND IT WAS HARD TO SEE." Defendant Cox-Lynn contacted Defendant Preston, who directed that Mr. Bowles be taken to the Hospital's Emergency Room for "fluids and shots for migraine." However, Jail videos appear to indicate that Mr. Bowles may have remained at the Jail more than an hour after his

7

collapse in the bathroom, and show him in a wheelchair, vomiting into a bucket, his face contorted in agony, and beating his head with his hands.

20. Upon admission to the Hospital's ER, doctors did emergency bloodwork and initiated intravenous administration of fluids and medications in a desperate attempt to stabilize Mr. Bowles. However, shortly after his admission to the ER and while awaiting the results of the bloodwork, Mr. Bowles became unresponsive and could not be revived. Mr. Bowles death was caused by a bleeding temporoparietal mass. His death while awaiting a real differential diagnosis of his real problem by a real doctor only emphasizes the "time-is-of-the-essence" nature of his condition.

21. An Extraordinary Occurrence Report concerning Mr. Bowles identifies Defendant French as a member of the Jail's staff that was "Involved in Occurrence" on March 27, but Plaintiffs are not in current possession of any documents indicating the nature of her involvement.

22. Despite the Hospital's direction on March 15 that Mr. Bowles be seen by a physician, monitored closely, and returned to the Hospital in the event he remained symptomatic, and despite Mr. Bowles' persistent complaints over more than ten (10) days of increasingly severe headaches, nausea and vomiting, dizziness, etc., it does not appear that he was ever seen by a physician or even Defendants Johnston or Preston (who were APRNs). Instead, Mr. Bowles was left entirely in the hands of an LPN and (perhaps) an RN who cannot diagnose a patient's problem, and cannot treat a patient's complaints without a physician or APRN's order. Defendant Johnston's involvement appears to be limited to a signature stamp affixed to a progress note on March 22, and there is no evidence of Defendant Preston's involvement after she was called about Mr. Bowles on March 23 until she directed he be transported to the ER on March 27. There was no differential diagnosis of Mr. Bowles' malady, much less even a cursory attempt to obtain the

information from which a differential diagnosis of Mr. Bowles' obviously serious medical condition could even attempt to be made.

23.     On information and belief, the Jail has an Emergency Medical Services Policy with terms that clearly embraced Mr. Bowles' obviously serious medical condition, but which were ignored by Jail employees whenever a medical professional – even an LPN with no ability to diagnose or treat a patient's illness – was on site.

24.     On information and belief -- and given the severity of Mr. Bowles' condition which can be observed first-hand in the disturbing videos taken on March 27 -- numerous verbal complaints about Mr. Bowles' condition made by Mr. Bowles, his cellmates, and deputy jailers to Defendants were either ignored entirely or were shrugged off, incorrectly, as signs and symptoms of drug withdrawal.

25.     ACH is an Illinois-based for-profit jail healthcare company.  It works in more than 250 jails spread over almost 20 states.  In order to maximize profit, it minimizes expense by staffing jails, like the one in this case, with an LPN (Defendant Cox-Lynn) and/or an RN who are supervised by APRNs (Defendants Johnston and Preston) who rarely visit the Jail more than once a week and who instead prefer to diagnose and treat obviously serious (if not life-threatening) medical conditions based upon a brief telephonic report of a cursory medical examination (typically, just the patient's subjective complaints and his vital signs).  Subjective complaints are routinely disregarded as not credible given the patient's incarceration, criminal charges and/or substance abuse history.  There is no differential diagnosis.  There is no continuity of care.  The preventable deaths caused by such a business model have been made the subject of an exposé by CBS News (see https://www.cbsnews.com/news/broken-jail-healthcare-system-poses-danger-

9

behind-bars), among others (see also http://www.mintpressnews.com/advanced-correctional-healthcares-brutal-brand-of-jailhouse-medicine/208265).

26. In addition to the foregoing, Mr. Bowles was indigent at all relevant times in issue in this Complaint, but was "bonded out" when transported from the Jail to the Hospital on March 27 solely to avoid Defendants' obligation to pay for the resulting medical expenses under KRS 441.045(3). As a consequence, Mr. Bowles' family has now been unjustly saddled with the substantial medical expenses incurred in the futile effort to save Mr. Bowles' life.

## VI. Causes of Action

### Count I

26. Defendants' conduct was intentional, reckless, deliberate, wanton and/or malicious, and was indicative of their total, deliberate and reckless disregard of and indifference to Mr. Bowles life as well as his rights and the risk of harm to his life occasioned by such conduct.

27. Plaintiff believes and, after reasonable discovery, will show that Mr. Bowles' treatment by Defendants was not unusual, but was part of a continuing policy, pattern, custom and/or practice of Defendants of willfully and deliberately ignoring the medical needs of inmates of the Jail. Such conduct is the result of customs and practices of Bourbon County, ACH and the individual Defendants named herein, either written or unwritten, that are systematically applied to all persons who exhibit the symptoms of obviously serious medical conditions while incarcerated at the Jail. Such practices constitute an arbitrary use of government power, and evince a total, intentional, deliberate and unreasonable disregard for and indifference to the lives and constitutional and common law rights of inmates at the Jail, including Mr. Bowles, and the wholesale violations of those rights likely to result from the regular and systematic pursuit of such practices.

28. As a result of the foregoing, Mr. Bowles, through Defendants' deliberate indifference and negligent and grossly negligent -- if not reckless, intentional and/or malicious -- conduct, was subjected to cruel and unusual punishment and ultimately deprived of his life without due process of law in violation of the Eighth, Tenth and Fourteenth Amendments of the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

## Count II

29. By virtue of the foregoing, Defendants were negligent and grossly negligent, and the medical professionals responsible for Mr. Bowles' care – Defendants ACH, Cox-Lynn, Johnston, and Preston – failed to meet the standard of care applicable to the professions.

## Count III

30. This is a wrongful death action for which Mr. Bowles, his estate and his minor children are entitled to recover damages pursuant to KRS 411.130.

## Count IV

31. Defendants are obligated to pay all medical expenses incurred in the futile attempt to save Mr. Bowles' life pursuant to KRS 441.045(3), and their failure and refusal to do so constitutes a violation of the statute.

## Count V

32. Defendants have been unjustly enriched to the extent of the medical expenses incurred in the futile attempt to save Mr. Bowles' life.

## VII.  Damages

33. Mr. Bowles' death was unnecessary and preventable, and his estate is therefore entitled to recover the income and earnings he would have enjoyed had he lived.  Mr. Bowles also experienced wanton and unnecessary mental and physical pain and suffering as a result of

Defendants' conduct, for which his estate is entitled to recover damages. Mr. Bowles' minor children are all entitled to recover for the loss of his love, society, support and companionship. Plaintiffs are entitled to recover all expenses incurred in the funeral and burial of Mr. Bowles, and Defendants should be required to pay all the expenses incurred in the futile effort to save his life pursuant to the duties imposed by KRS 441.045(3). Finally, Defendants' violations of Mr. Bowles' constitutional and common law rights were cruel, willful, malicious, or negligence (gross) and evinced a total and reckless disregard for his life and those rights, entitling Plaintiffs to recover punitive damages from Defendants in order to deter such conduct in the future.

**WHEREFORE**, Plaintiffs request a trial by jury, that Defendants be required to pay all expenses incurred in the futile effort to save Mr. Bowles' life, and that Plaintiffs be awarded: (a) actual damages for (i) Mr. Bowles' lost future income, (ii) Mr. Bowles' mental and physical pain and suffering, (iii) Mr. Bowles' minor children's loss of his love, society, support and companionship, and (iv) Plaintiffs' expenses incurred in the funeral and burial of Mr. Bowles; (b) punitive damages; (c) costs; (d) attorneys' fees; (e) pre- and post-judgment interest on all sums awarded; and (f) all other relief to which Plaintiffs', Mr. Bowles' estate, and his minor children are entitled under law or in equity.

Respectfully submitted,

/s/ Gregory A. Belzley
Gregory A. Belzley
gbelzley@aol.com
Camille A. Bathurst
camillebathurst@aol.com
BelzleyBathurst Attorneys
P.O. Box 278
Prospect, KY  40059
502/292-2452

Michael F. Eubanks

Shumate, Flaherty, Eubanks &
Baechtold, PSC
225 West Irvine Street
Richmond, KY 40476-0157
859/623-3049 (Telephone)
859/623-6406 (Facsimile)
meubanks@eblawfirm.com

***Counsel for Plaintiffs***